UNITED STATES U.S. DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X
PIONEER GP LIMITED and CHAMPLAIN : **JURY TRIAL DEMANDED**
INVESTMENT HOLDINGS LIMITED, :
: Case No. 22-cv-373
           Plaintiffs, :
: **COMPLAINT**
   -against- :
:
DARIA VALDEZ a/k/a DARIA :
PASTOUKHOVA and JASON SWEENEY, :
:
           Defendants. :
X
-------------------------------------------------------

    Plaintiffs, Pioneer GP Limited and Champlain Investment Holdings Limited, by and through their attorneys, Ropers Majeski PC, as and for their Complaint against the Defendants, Daria Valdez, also known as Daria Pastoukhova, and Jason Sweeney, hereby allege, upon information, belief, and knowledge as follows:

### I. NATURE OF THE CASE

    1.    This action arises out of a complicated network of individuals and companies, including Defendants Mrs. Daria Valdez a/k/a Daria Pastoukhova ("Mrs. Valdez") and Mr. Jason Sweeney ("Mr. Sweeney") who have secretly perpetrated fraud for over a prolonged period on the Pioneer Recovery Fund L.P., ("Pioneer Recovery Fund") the sole investor in Plaintiff Champlain Investment Holdings Limited ("Champlain") Plaintiff Pioneer GP Limited ("Pioneer GP").

    2.    The actions of Mrs. Valdez, Mr. Sweeney, and the multitude of organizations with which they have been affiliated (the "Valdez Network") have spawned numerous litigations including (i) multiple 28 U.S.C. § 1782 proceedings brought before this court, (ii) winding up proceedings in the Bahamas, (iii) winding up proceedings in the Cayman Islands, and (iv) a

lawsuit, of which the Plaintiffs have become aware in the New York Supreme Court, regarding the proceeds of an escrow account subsequent to the sale of one of the investments.

3. As set forth below, Plaintiffs, Pioneer GP and Champlain bring this action to recover the money which Plaintiff Champlain is owed from a joint investment in a company owning a valuable New York property.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. 1331. This Court also has supplemental jurisdiction pursuant to 28 U.S.C.§ 1367.

5. Federal question jurisdiction is premised on Defendants' violation of The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§1961, *et seq.*

6. This Court has personal jurisdiction over the Defendants because the Defendants operate in the State of New York and have had continuous and systematic contacts with the State of New York.

7. The underlying investment at issue is related to real property located at 10 East 63rd Street in Manhattan.

8. Venue is Proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b). The Defendants regularly conduct business in the State of New York.

## III. THE PARTIES

9. Plaintiff Pioneer GP, is a Cayman Islands company formed for sole purpose of being the general partner of the Pioneer Recovery Fund, which is an investment fund formed as an exempted limited partnership in the Cayman Islands. The registered office of Pioneer GP is 3-211, Governors Square, Grand Cayman, KYl-1009, Cayman Islands.

10. Plaintiff Champlain is a company organized and existing pursuant to the laws of the Cayman Islands and engaged therein in the business of being a holding company.

11. Defendant Mrs. Valdez is a resident of the Bahamas who regularly conducts business in New York.

12. Mrs. Valdez was one of the beneficial owners of 10 East 63rd Street Inc, the owner of 10 East 63rd Street, New York ("New York Property").

13. Defendant Mr. Sweeney is a resident of Ireland who regularly conducts business in New York and he operates through his and his wife's Irish company, Universal Corporate Services Ltd ("UCL").

14. Mr. Sweeney testified that he acted in regards to the New York Property and its ownership structure on the instruction of Mrs. Valdez.

15. Defendants are also subject to jurisdiction pursuant to CPLR § 302 because, at relevant times, they owned, used, and/or possessed and/or were involved in the disposition of real property in New York—specifically the property at 10 East 63rd Street.

16. As alleged herein, Defendants also transacted business in the state.

17. Mr. Sweeney through UCL or in person was a director or general partner in numerous organizations having ownership or beneficial ownership in 10 East 63rd Street Inc, the owner of 10 East 63rd Street, New York New York.

18. Mr. Sweeney was Chief Executive Officer, President and Director of 10 East 63rd Street Inc.#Mr Sweeney testified that he acted in regards to the New York Property and its ownership structure on the instruction of Mrs. Valdez.

19. Mr. Sweeney has testified that he negotiated and executed the vast majority of documents with respect to the sale of 10 East 63rd Street Inc in 2016.

20. As set forth below over the course of nearly a decade Mrs. Valdez and Mr. Sweeney operating through the Valdez Network defrauded the Pioneer Recovery Fund out of millions of dollars.

## IV. FACTUAL ALLEGATIONS

21. As detailed in the Affidavit of Urgency of Lawrence Edwards submitted in December 2021 to the Commercial Division of the Supreme Court of the Commonwealth of the Bahamas (Exhibit A) (the "Bahamas Affidavit"), Defendants Mr. Sweeney and Mrs. Valdez, initially through Mr. Lance Valdez ("Mr. Valdez") (now deceased), created and/or operated the Valdez Network, a highly complex web of related and/or connected entities, which defrauded the Plaintiffs out of millions of dollars from, *inter alia* but without limitation, an investment in 10 East 63rd Street Inc, the owner of the New York Property.

22. Relevant to this lawsuit, Plaintiffs and entities controlled and or operated by Mr. Sweeney and Mrs. Valdez invested indirectly in 50% of the shares in 10 East 63rd Street Inc. 10 East 63rd Street Inc . Although at the time of the investment in around 2010 the sole investor in the Pioneer Recovery Fund was given to believe that this investment was in the realizable value of the New York Property (subject to a mortgage), it has been revealed to the Plaintiffs only in 2021 through the *subpoena* proceedings in New York referred to in paragraph 2 above that the investment in 10 East 63rd Street Inc was encumbered by a significant inbuilt contingent tax liability which would only be discharged when 10 East 63rd Street Inc itself sold the New York Property. This fact was never disclosed to the Plaintiffs or to the sole investor in the Pioneer Recovery Fund (the "Sole LP"). The consequence was that the realizable proceeds of the sale of 10 East 63rd Street Inc would be far less than the real value of the New York Property.

-4-
4876-8213-7609.1

23. The balance of the shares in 10 East 63rd Street Inc were acquired by Valdez Network entities. This related party interest was never disclosed to the Plaintiffs.

24. The New York property was subject to a mortgage to Platform Eight International Limited ("P8"), a Cayman Islands incorporated entity. The closing statement from the sale of the New York Property shows a balance of $4,151,750 was paid off in full from the sale proceeds. P8 is a further entity linked to the Defendants and affiliated parties, Charles Holzer (one of the replacement investment advisors following Mr. Valdez's death) and is a co-investor in ESO one of Pioneer Recovery Fund's investments, and a recipient of management fees undisclosed to the Plaintiffs. The affiliated party nature of the mortgage was withheld from the Plaintiff.

25. The structure of the Pioneer Recovery Fund's investment in 50% of the shares in 10 East 63rd Street Inc needs explanation. The shares were held by Subacu Holdings Ltd ("SHL"), a British Virgin Islands ("BVI") Company, whose shares were in turn owned by (i) London Capital Holdings Ltd ("LCH"), another BVI Company owned indirectly through PCH Ltd ("PCH"), a Bahamas company whose shares are understood to be owned by Mrs. Valdez, (ii) Subacu Investment Partners LP ("SIP"), a Bahamas exempt partnership, of which 80% is owned by the Pioneer Recovery Fund and 10% by LCH, and (iii) PCH. As an additional strand of convoluted complexity, the other 50% shareholding 10 East 63rd Street Inc was owned by Guam Investment Services Ltd ("Guam"), another BVI company virtually the entirety of whose shareholding was owned by LCH. Each of SHL, LCH, SIP and Guam are Valdez Network entities.

26. Pioneer Recovery Fund indirectly invested nearly $3,500,000 in the 10 East 63rd Street Inc structure. This investment was originally valued as exposure to an economic interest of 40% in the equity of 10 East 63rd Street Inc. The Sole LP was subsequently informed that this investment had been diluted to 30% without any explanation despite repeated requests.

27. The ultimate controllers and/or beneficiaries of the Valdez Network are Defendants Mrs. Valdez and Mr. Sweeney.

28. In addition, the Valdez Network contained numerous additional entities as detailed in the Bahamas Affidavit.

29. As set forth in the Bahamas Affidavit, components of the Valdez Network, received and took monies from third parties, invested them in structures often with little or no return, little or no explanation, and with secret undisclosed related party interests and preferential treatment to the benefit of beneficiaries of the Valdez Network and the detriment of those third parties. A brief history of the events described in the Bahamas Affidavit is included below.

30. The history of this matter dates back to 2008 when Mr. Lance Valdez, husband of the Defendant Mrs. Valdez and now deceased, founded the Pioneer Recovery Fund.

31. The Sole LP committed $10 Million to fund Pioneer Recovery Fund—and it is and was at all material times the sole limited partner in Pioneer Recovery Fund.

32. In 2008 and for several years thereafter, Pioneer Investment Management Ltd, ("Pioneer Investment") acted as the investment manager to Pioneer Recovery Fund.

33. Defendant Jason Sweeney, was the Chief Operating Officer and Director of Legal Affairs of Pioneer Investment.

34. Crescent Advisors, Ltd ("Crescent") was the original general partner of Pioneer Recovery Fund.

35. For several years following the Sole LP's commitment, Pioneer Investment and Mr. Valdez invested Pioneer Recovery Fund's assets in a bewildering and complex structure of companies, partnerships, debt instruments and transactions spanning multiple jurisdiction and legal regimes.

36. In November 2012, Mr. Valdez died in a helicopter crash in the Bahamas.

37. Up until his death, Mr. Valdez provided the Sole LP with regular updates on the status and performance of the Pioneer Recovery Fund's investments.

38. These updates consistently reported that all the investments were performing positively and were expected to yield great returns, including the investment in the New York property.

39. It was not until the Sole LP initiated a forensic investigation and after the threat of legal proceedings that, in 2014, the Plaintiffs started to discover that Pioneer Recovery Fund's assets were principally invested in ways that served Mr. Valdez's undisclosed personal interests including Mrs. Valdez, their family, and others close to him.

40. Immediately after Mr. Valdez's death, Mr. Sweeney attempted to fill the void left by Mr. Valdez and reported to the Sole LP that Pioneer Investment Fund had appointed two new Investment Advisors, Charles Holzer and Alex Schmid. Alex Schmid has claimed that this representation by Mr. Sweeney is false.

41. At the time of Mr. Valdez's death, the Sole LP had contributed 90% of the $10 Million in capital that it had committed for investment in Pioneer Recovery Fund.

42. Mr. Sweeney's pattern of fraudulent activities can be shown to have begun before or around this time.

43. In January 16, 2013, Crescent, demanded that the Sole LP make a further capital drawdown payment to Pioneer Recovery Fund of the $1 Million remaining on its capital commitment.

44. Mr. Sweeney continued to press for the further capital contribution from the Sole LP in February 2013 despite the Sole LP's concerns that the Pioneer Recovery Fund was no longer

able to operate in its accordance with the purposes for which it was established following Mr. Valdez's death.

45. Around this time, Mr. Sweeney also emailed to the Sole LP a "Fourth Quarter 2012/First Quarter 2013 Activity Summary."

46. The summary contained statements regarding Pioneer Recovery Fund's investments, and noted that one investment "continues to be a solid investment and to increase in value" while other investments "continue to perform well."

47. Throughout calls and emails with Mr. Sweeney in early 2013, the Sole LP had been led to believe that there were other investors in Pioneer Recovery Fund and that if the Sole LP did not contribute the requested $1 Million, it would be subject to punitive dilution terms to the benefit of other investors who conformed with the draw-down request.

48. Relying, in part on this representation and in part on the activity summary provided by Mr Sweeney, the Sole LP contributed the $1 Million.

49. Subsequent investigations discovered that there were never other investors in the Pioneer Recovery Fund, so that dilution on the basis threatened was never possible and such threat by Mr Sweeney was false and fraudulent.

50. Subsequent investigations in 2013 also revealed that neither Mr Sweeney nor Crescent were in possession of any documentation to support their representations regarding the validity of the investments made by the investment manager.

51. While these investigations were ongoing, Crescent attempted to, and did in fact without informing the Sole LP, sell two significant investments, the investment in 10 East 63rd Street Inc and an investment in ESO Prop Corp. Ltd. ("ESO"). (Mr. Sweeney was a director of ESO.)

52. In March 2013 Crescent valued the Pioneer Recovery Fund's interest in the New York Property at $3,528,466.

53. In March 2013 Crescent valued the Pioneer Recovery Fund's interest in ESO at $969,680.

54. Despite these valuations, on August 9, 2013 Crescent revealed that the Pioneer Recovery Fund had, without informing the Sole LP, sold these two investments to Champlain at that time not owned by the Pioneer Recovery Fund[1], for a significantly and clearly fraudulent undervalued consideration. The investment in 10 East 63rd Street Inc was sold for $350,000 and the ESO investment was sold for $240,000.

55. The Sole LP, despite being the only investor in Pioneer Recovery Fund and the then ongoing investigation, was not informed of these sales until after they had taken place.

56. The Sole LP had previously requested that Crescent be substituted as the general partner of the Pioneer Recovery Fund and an independent entity be appointed to investigate matters and orderly manage the investments. Plaintiff Pioneer GP was formed and substituted as the general partner for this purpose. However, Crescent continuously delayed complying with the request for substitution until October 2013, allowing for the sales of the investments to Champlain (which at that stage was not owned by the Pioneer Recovery Fund) to occur prior to the transfer in control.

57. In April 2014 the investment management agreement between the Pioneer Recovery Fund and Pioneer Investment was terminated and Pioneer GP became responsible for the management of the assets in the fund.

---

[1] As shown below in paragraphs 60-62 the unwinding of this fraudulent transfer resulted in the Pioneer Recovery Fund becoming the owners of Champlain.

58. Around this time, an investigation was commenced into the sale of the two investments. This investigation included conducting depositions in the United States.

59. The investigation revealed, *inter alia*, that the sale of the investments for significantly undervalued prices was the result of Mr. Sweeney conspiring with Mr. Holzer to sell the assets for the benefits of Mr. Holzer's family connections.

60. Ultimately, after costly pre-litigation discovery, and immediately on the day following an incomplete and elusive deposition of Mr. Holzer, Pioneer GP and Champlain (still at that time not owned by the Pioneer Recovery Fund) agreed to transfer the two investments back to Pioneer GP for close to Champlain's purchase price. However, the general partner of SIP, the owner of the indirect New York Property investment, Beecham Ltd, ("Beecham") a Bahamas company whose shares are owned by LCH and hence is a Valdez Network entity (and whose director is Mr. Sweeney's company, UCL) and the directors of ESO (which included Mr. Sweeney) would not provide consent to the direct transfer of the respective investments with no reason given for this refusal.

61. As a result, the settlement was structured such that the Pioneer Recovery Fund purchased all of the shares of Champlain.

62. Thus, Champlain became an asset of the Pioneer Recover Fund, subject to management by Pioneer GP.

63. Following the return of the New York Property investment and the ESO investment to the Pioneer Recovery Fund, Pioneer GP made numerous attempts to obtain information as regards their status.

64. These inquiries were made to Crescent and the various persons affiliated with the investment include without limitation a Mr. David Rounce, Mr. Sweeney, Mrs. Valdez and her

representative. Despite the occasional promise to respond, no material information, no updates, no valuations and no financials had been provided as to the status of the New York Property investment.

65. As a result of the various transactions, Champlain owns and Pioneer GP manages an 80% interest in SIP, which through a series of holding companies resulted in a 40% (or 30%) indirect ownership in shares of 10 East 63rd Street Inc.

66. Further investigations revealed that in March 2016 without any consultation with the Plaintiffs the shares in 10 East 63rd Street Inc were in fact sold by LCH, SIP and PCH as the controlling owners of the shares in SHL and Guam to Griffen Holding Services, ("Griffen") a BVI company.

67. Despite being the owner of an 80% interest in SIP, Champlain was never notified of this sale (the 80% interest in Subacu Investment Partners, L.P., amounted to a 40% or 30% indirect interest in the equity of 10 East 63rd Street Inc).

68. Mr. Sweeney through UCL acted as the sole director of Beecham, the general partner of SIP, and has testified in separate New York proceedings that he "negotiated and executed the vast majority of the documents with respect" to this sale.

69. The gross sale price of the New York Property was $14,226,500, while the estimated value of the New York Property had been $21.15 Million in 2011, with New York property prices having only risen since then.

70. Plaintiffs understand that the negotiations with Griffen were premised on a gross value of the property in the region of $28 Million. However, following the *subpoena* proceedings referred to in paragraph 2 involving Griffen which revealed that (although the Sole LP had been given to understand to the contrary) Plaintiff Champlain's indirect investment in 10 East 63rd

Street Inc was not in the net resaleable value of the property after payment of mortgages but in a company with an "inbuilt" contingent tax liability which substantially reduced the expected value of the investment. This was never disclosed or made clear at any time to the Sole LP or the Plaintiffs who were given to understand otherwise.

71. No proceeds from this sale have ever been remitted or otherwise accounted for to Champlain, the Pioneer Recovery Fund, or Pioneer GP and the fact of the sale was never made known to them by Mr. Sweeney, Mrs. Valdez or any other Valdez Network entity. The information was only acquired through searches in the public domain and the details thereof only through the *subpoena* proceedings referred to in paragraph 2.

72. As part of the litigation referred to in paragraph 2 pursuant to the sale of 10 East 63rd Street Inc with Griffen regarding an escrow amount, Mr. Sweeney testified that Mrs. Valdez was a beneficiary of the structure owning the New York Property, albeit she did not hold all the shares directly. Furthermore, Mrs. Valdez made the decision to sell the property in her capacity as a shareholder directly and indirectly throughout the ownership structure. The purported reason for selling the interests in the New York Property were Mrs Valdez's own cashflow issues.

73. Ultimately, the shares in 10 East 63rd Street Inc were sold at a price which took account of the heavy contingent tax liability in a deal negotiated by Mr. Sweeney which again benefitted numerous Valdez Network entities.

74. As detailed in the Bahamas Affidavit, no proceeds from the New York Property Sale have ever been remitted or otherwise accounted for to Champlain, the Pioneer Recovery Fund, or Pioneer GP. Indeed, the closing statement for the sale of 10 East 63rd Street Inc. specifies Mrs. Valdez, UCL (Mr. Sweeney's company) and various other Valdez Network entities as recipients of the entire net proceeds.

75. Therefore, Mrs. Valdez (assisted by Mr. Sweeney) was the primary beneficiary of the sale proceeds of 10 East 63rd Street Inc and defrauded Plaintiffs out of millions of dollars.

76. Only as a result of the *subpoena* proceedings with Griffen which, without limitation, revealed the contingent tax liability and provided the closing statement for the sale of 10 East 63rd Street Inc have the Plaintiffs been able to identify the full extent of the fraud in spite of extensive efforts over the years (with no response from Mr. Sweeney, Mrs. Valdez and the Valdez Network) to extract the necessary information.

77. Indeed, throughout 2017 and 2018, Plaintiffs made numerous attempts to learn of the status of the Pioneer Recovery Fund's investments.

78. No information was forthcoming; rather, Mrs. Valdez and her agents made several representations throughout the course of late 2017 and early 2018 that substantive responses regarding the investments would be forthcoming.

79. Those statements were false and were designed to mislead the Plaintiffs.

80. Indeed, in October 2017, Mrs. Valdez's counsel advised that the "New York property in question is located at 10 East 63rd Street, New York, NY 10065" and that he would be providing more information shortly.

81. This statement was designed to mislead the Plaintiffs— because at this time the New York Property had, in fact, already been sold, thus there was no "New York Property" in the investment structure.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Misappropriation of Funds Against All Defendants)

82. Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 81 hereof as if set forth at length herein.

83. As set forth above and in the Bahamas Affidavit, the sale of 10 East 63rd Street Inc should have released a significant return to the Plaintiffs; instead this money, through the web of the Valdez Network, has gone largely directly or indirectly to Mrs. Valdez as well as a payment to UCL (Mr. Sweeney's company).

84. The Valdez Network, Mr. Sweeney, and Mrs. Valdez failed to provide the Plaintiffs with their share of the proceeds from the sale of 10 East 63rd Street Inc.

85. Defendants represented to Plaintiffs that no funds were available from the sale of 10 East 63rd Street Inc.

86. The Valdez Network, Mr. Sweeney, and Mrs. Valdez had access to proceeds of the sale of 10 East 63rd Street Inc.

87. The Valdez Network, Mr. Sweeney, and Mrs. Valdez used the proceeds of the sale of 10 East 63rd Street Inc. for their own purposes instead of remitting the appropriate share of the proceeds to the Plaintiffs.

88. The Valdez Network, Mr. Sweeney (through UCL), and Mrs. Valdez unlawfully took money rightfully owed to the Plaintiffs.

89. Therefore, Plaintiffs are entitled to damages from both Mrs. Valdez and Mr. Sweeney in an amount to be determined at trial.

### AS AND FOR A SECOND CAUSE OF ACTION
**(Fraud Against All Defendants)**

90. Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 89 hereof as if set forth at length herein.

91. The Valdez Network, Mrs. Valdez, and Mr. Sweeney, worked together to mislead the Plaintiffs with respect to the status and value of the New York Property.

4876-8213-7609.1

92. The Plaintiffs relied upon the Defendants' representations regarding the New York Property to their detriment.

93. As set forth above and in the Bahamas Affidavit, the sale of 10 East 63rd Street Inc should have provided a significant return to the Plaintiffs; instead this money through the web of the Valdez Network has gone largely directly and indirectly to Mrs. Valdez with a payment also to Mr. Sweeney (through UCL).

94. Defendants represented to Plaintiffs that no funds were available from the sale of 10 East 63rd Street Inc .

95. This representation was false; public records show that the sale proceeds were in excess of 10 East 63rd Street Inc's related loans.

96. Defendants' conduct is a clear fraud committed against the Plaintiffs.

97. Defendants' willful failure to provide any updates to the Plaintiffs and their refusal to respond to Plaintiffs' inquiries over the course of several years regarding the investment also amount to fraud by concealment.

98. Therefore, Plaintiffs are entitled to damages from both Mrs. Valdez and Mr. Sweeney in an amount to be determined at trial.

### AS AND FOR A THIRD CAUSE OF ACTION
(Violation of the Racketeer Influenced and Corrupt Organizations Act,
18 U.S.C.§§ 1961,*et. seq.*, against all Defendants)

99. Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 98 hereof as if set forth at length herein.

100. The Valdez Network, Mrs. Valdez, and Mr. Sweeney comprised an "association-in-fact" enterprise.

101. The goal of the enterprise was to appropriate funds that the Pioneer Recovery Fund had provided to the Valdez Network as part of its investments through the Valdez Network.

102. Mr. Sweeney and Mrs. Valdez has engaged in a pattern of fraudulent behavior regarding the sale of the Pioneer Recovery Fund's interest in 10 East 63rd Street Inc dating back to the original attempt to sell the interest for significantly undervalue in 2013.

103. The Valdez Network, Mrs. Valdez, and Mr. Sweeney, and their agents, utilized both wire and postal services in the sale of 10 East 63rd Street Inc and throughout to mislead the Sole LP and the Plaintiffs as to the status of the investment.

104. The Valdez Network, Mrs. Valdez, and Mr. Sweeney, and their agents, utilized wire services for the transfer of the proceeds of the New York Property, including the misappropriation of those proceeds.

105. Defendants' representations in 2017 and 2018 regarding the New York Property were false, insofar as they intentionally led Plaintiffs to believe that the New York Property had not been sold.

106. Later, Defendants represented to Plaintiffs that no funds were available from sale of the 10 East 63rd Street Inc.

107. These representations were false.

108. The false and misleading representations relate to interstate and international commerce— the sale of 10 East 63rd Street Inc. and the related proceeds.

109. The representation was part of Defendants' and the Valdez Network's scheme improperly to obtain and to retain the proceeds of the sale of 10 East 63rd Street Inc.

110. Therefore, Plaintiffs are entitled to damages from both Mrs. Valdez and Mr. Sweeney in an amount to be determined at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION
**(Conversion Against All Defendants)**

111. Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 109 hereof as if set forth at length herein.

112. Mrs. Valdez and Mr. Sweeney (through UCL) intentionally obtained the proceeds from the sale of the 10 East 63rd Street Inc.

113. A significant portion of these proceeds rightfully belong to the Plaintiffs.

114. Mrs. Valdez and Mr. Sweeney are interfering with Plaintiffs' rights to the proceeding by failing to return the proceeds to the Plaintiffs.

115. Plaintiffs have demanded that the Valdez Network, Mrs. Valdez, and Mr. Sweeney return the proceeds from the sale of 10 East 63rd Street Inc to which Plaintiffs are entitled.

116. Therefore, Plaintiffs are entitled to damages from both Mrs. Valdez and Mr. Sweeney in an amount to be determined at trial.

## AS AND FOR A FIFTH CAUSE OF ACTION
**(Breach of Fiduciary Duty Against All Defendants)**

117. Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 115 hereof as if set forth at length herein.

118. Defendants had a fiduciary relationship with the Plaintiffs as members of closely held corporations and/or partnerships.

119. Defendants ultimately invested over $3.5 million in relation to the New York Property.

120. Defendants now claim that there are no proceeds after the sale of this investment.

121. Defendants violated their fiduciary duties by selling 10 East 63rd Street Inc without ever having informed the Plaintiffs about the contingent tax liability therein or consulting the

Plaintiffs about the sale as well as by failing to provide Plaintiffs with their respective proceeds from the sale.

122.    Defendants either mismanaged the New York Property investments or are willfully withholding proceeds owed to the Plaintiffs. Either action is a breach of Plaintiffs' fiduciary duties.

123.    Plaintiffs were damaged as a result of this breach in an amount to be determined at trial.

## V. DEMAND FOR TRIAL

WHEREFORE, Plaintiffs respectfully demands judgment in its favor and against Defendants Mrs. Valdez and Mr. Sweeney on all causes of action in an amount to be determined at trial, with interest thereon, together with costs and disbursements of this action and such other, further or different relief that the Court may deem to be just and proper.

ROPERS MAJESKI PC

BY: _____
Blaise U. Chow
blaise.chow@ropers.com
Michael W. Jacobson
michael.jacobson@ropers.com
Martin R. West II
martin.west@ropers.com
750 Third Avenue, 25th Floor
New York, NY  10017
Telephone:  212.668.5927
Facsimile:  212.668.5929

Attorneys for Plaintiffs