UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :        22cv373 (DLC)
PIONEER GP LIMITED and CHAMPLAIN    :
INVESTMENT HOLDINGS LIMITED,        :
                                    :
                                    :        OPINION AND ORDER
                    Plaintiffs,     :
                                    :
              -v-                   :
                                    :
DARIA VALDEZ and JASON SWEENEY,     :
                                    :
                    Defendants.     :
                                    :
------------------------------------X

APPEARANCES:

For the plaintiffs:
Ropers, Majeski, Kohn & Bentley (NYC)
Blaise U. Chow
Martin R. West II
750 3rd Avenue., 25th Floor
New York, NY 10017

For the defendants:
Baker & Hostetler LLP (NYC)
Howard E. Cotton
Michael S. Gordon
45 Rockefeller Plaza
New York, NY 10111

DENISE COTE, District Judge:

        The plaintiffs, each of whom is a Cayman Islands company,

have brought this action against residents of the Bahamas and

Ireland, alleging that they mismanaged a Cayman Islands'

investment fund.  The plaintiffs bring claims under the

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

U.S.C. §§ 1961 et seq., and state law.  The defendants have

moved to dismiss the first amended complaint ("FAC") for, among other grounds, failure to state a claim under RICO.  Because the RICO claims are time-barred, the motion to dismiss those claims is granted.  The Court declines to exercise supplemental jurisdiction over the state law claims.

## Background

The following facts are drawn from the FAC and documents upon which it relies.  For the purposes of deciding this motion, the factual allegations in the FAC are accepted as true, and all reasonable inferences are drawn in the plaintiffs' favor.

This litigation arises out of the parties' connections to Pioneer Recovery Fund L.P. (the "Fund"), a Cayman Islands investment fund.  The sole investor in the Fund (the "Investor"), whom the FAC does not identify, committed $10 million to the Fund.  Plaintiff Pioneer GP Limited ("Pioneer") is the general partner of the Fund, and plaintiff Champlain Investment Holdings Limited ("Champlain") is a Cayman Islands holding company owned by the Fund.

In 2008, Lance Valdez ("Mr. Valdez"), the deceased spouse of defendant Daria Valdez, founded the Fund.  At its inception, the Fund was managed by Pioneer Investment Management Ltd. ("Pioneer Investment").  Defendant Jason Sweeney was the Chief Operating Officer and Director of Legal Affairs of Pioneer

Investment.  Non-party Crescent Advisors, Ltd. ("Crescent") was the original general partner of the Fund.

Mr. Valdez invested the Fund's assets across various entities and through numerous complex transactions.  Among these investments was an investment of $3.5 million in 10 East 63rd Street, Inc. ("10E63 Inc."), which owned a property in Manhattan located at 10 E. 63rd Street (the "Property").  The Fund's investment was valued at about 30% or 40% of the equity in the Property.

Defendant Daria Valdez, a resident of the Bahamas, also had an ownership interest in the Property.  Sweeney, an Irish resident, was the Chief Executive Officer, President, and Director of 10E63 Inc.  Sweeney is also a director or general partner of various entities that also had an ownership interest in 10E63 Inc.

Mr. Valdez died in November 2012, and Sweeney attempted to fill the void left by Mr. Valdez's passing.  In late 2012, Sweeney falsely told the Investor that two advisors had been appointed to the Fund.  One of those purported advisors later stated that Sweeney's representation about his appointment was false.

Around this time, the Investor had contributed 90% of the $10 million it had committed to the Fund.  In January 2013, Crescent demanded that the Investor contribute the remaining $1

million.  Sweeney sent the Investor a summary of the Fund's investments in the last quarter of 2012 and the first quarter of 2013, which falsely reported that the investments were doing well and increasing in value.  There was, however, no documentation to support those written representations regarding the value of the investments.  Sweeney also led the Investor to believe that there were other investors in the Fund, which was not true.  Based on these false representations, the Investor contributed the remaining $1 million.

In August 2013, Crescent sold to Champlain the Fund's interests in 10E63 Inc. for $350,000 and the Fund's interest in a different company, ESO Prop Corp. Ltd. ("ESO"), for $240,000 ("2013 Investment Sales").  These sales were for substantially less than the investments had been valued.  The FAC asserts that these sales were fraudulent.  The Investor was not informed of the sales until after the sales had occurred.

At the request of the Investor, and after considerable delay, Pioneer was created and replaced Crescent as the general partner of the Fund.  Pioneer began investigating the circumstances surrounding the 2013 Investment Sales.

In September 2014, Pioneer brought a 28 U.S.C. § 1782 proceeding ("2014 § 1782 Proceeding") in this Court seeking information about the 2013 Investment Sales for use in anticipated litigation in the Cayman Islands.  After obtaining

4

this discovery, and as a result of a settlement, Champlain
became an asset of the Fund.

In March 2016, entities that owned shares of 10E63 Inc.
sold their shares to Griffen Holdings Services.  These
shareholders included Subacu Investment Partners LP ("SIP").
Sweeney was the sole director of the general partner of SIP, and
negotiated and executed the documents relating to the sale of
SIP's shares in 10E63 Inc.  Champlain owned an 80% interest in
SIP, but was not advised of the sale orchestrated by Sweeney
before the sale occurred.  The FAC asserts that it was Valdez
who made the decision to sell the Property.

In 2017 and 2018, the plaintiffs continued their
investigations of the status of the Fund's investments.  On
September 20, 2017, Valdez's lawyer told the plaintiffs that the
"New York property in question is located at 10 East 63rd
Street, New York, NY 10065," but did not advise them that the
Property had already been sold.

In 2020, the plaintiffs commenced proceedings under 28
U.S.C. § 1782 in this Court against 10E63 Inc. and other related
entities.  Through these proceedings, the plaintiffs learned in
2021 that the value of Champlain's investment in 10E63 Inc. was
not the value of the Property but rather the value of a company
with an "inbuilt" contingent tax liability, which significantly
reduced the value of the investment.  The shares in 10E63 Inc.,

therefore, had been sold at a price that took this tax liability into account.  The plaintiffs also learned that the Property had net operating losses amounting to $6 million, and that the Valdez family lived in the Property during this time.

Prior to 2023, the plaintiffs had not received any proceeds from the sale of the Property.  In January 2023, as a result of liquidation proceedings in the Bahamas, the "liquidators" received $600,000.

The plaintiffs commenced this action on January 14, 2022.  On December 7, Sweeney moved to dismiss the complaint, and an Order of December 8 set a deadline for the plaintiffs to amend their complaint or oppose Sweeney's motion to dismiss.  The Order stated that it would be unlikely that the plaintiffs would have a further opportunity to amend.

The FAC was filed on January 30, 2023.  The plaintiffs bring two claims under RICO: for a violation of RICO and for a conspiracy to violate RICO.  See 18 U.S.C. § 1962(c)-(d).  The plaintiffs also assert state law claims for misappropriation of funds, fraud, conversion, and breach of fiduciary duty.  The defendants moved to dismiss the FAC on March 13.  The motion became fully submitted on April 24.

## **Discussion**

To survive a motion to dismiss for failure to state a claim, the complaint "must plead enough facts to state a claim

to relief that is plausible on its face." Green v. Dep't of
Educ. of City of New York, 16 F.4th 1070, 1076–77 (2d Cir. 2021)
(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).
"A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged." Charles v. Orange County, 925 F.3d 73, 81 (2d Cir.
2019) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).
"In determining if a claim is sufficiently plausible to
withstand dismissal," a court "accept[s] all factual allegations
as true" and "draw[s] all reasonable inferences in favor of the
plaintiffs." Melendez v. City of New York, 16 F.4th 992, 1010
(2d Cir. 2021) (citation omitted). Nevertheless, a court is
"not required to credit conclusory allegations or legal
conclusions couched as factual allegations." Hamilton v.
Westchester County, 3 F.4th 86, 91 (2d Cir. 2021) (citation
omitted). Additionally, a court may "consider extrinsic
material that the complaint 'incorporate[s] by reference,' that
is 'integral' to the complaint, or of which courts can take
judicial notice." Lively v. WAFRA Inv. Advisory Group, Inc., 6
F.4th 293, 305 (2d Cir. 2021) (citation omitted).

      The defendants have moved to dismiss the FAC for failure to
state a claim for relief under RICO, on forum non conveniens
grounds, and for lack of personal jurisdiction. Because this

Opinion concludes that the RICO claims are untimely and declines to exercise supplemental jurisdiction over the state law claims, the forum non conveniens and personal jurisdiction arguments will not be addressed.

I.   Statute of Limitations for RICO Claims

"RICO claims are subject to a four-year statute of limitations." Koch v. Christie's Int'l PLC, 699 F.3d 141, 148 (2d Cir. 2012). Although the statute of limitations is an affirmative defense, it may be decided in a motion to dismiss when the defense appears on the face of the complaint. Ellul v. Congregation of Christian Bros., 774 F.3d 791, 798 n.12 (2d Cir. 2014).

"In a RICO case, the first step in the statute of limitations analysis is to determine when the plaintiff sustained the alleged injury for which the plaintiff seeks redress." Koch, 699 F.3d at 150. The statute of limitations begins to run when a plaintiff discovers, or through reasonable inquiry should have discovered, his injury, and does not await discovery of the pattern of racketeering activity. Rotella v. Wood, 528 U.S. 549, 553, 559 (2000) (rejecting a pattern-discovery rule in favor of an injury-discovery rule); see also In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 59 (2d Cir. 1998).

A plaintiff is on inquiry notice of his injury when there are sufficient "storm warnings" such that "the circumstances would suggest to an investor of ordinary intelligence the probability that [he or] she has been defrauded." Koch, 699 F.3d at 151 (citation omitted).  When the plaintiff makes some inquiry, knowledge is imputed from the date the plaintiff in the exercise of reasonable diligence should have discovered the fraud.  Id. at 150, 153; see also Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 362 (2d Cir. 2013).

The plaintiffs' RICO claims are time-barred.  The plaintiffs allege that the defendants used the wires and mail to mislead the Investor and the plaintiffs about the Fund's investment in the Property and to transfer the proceeds from the sale of the Property.  The FAC's RICO claims are barebones and do not identify the predicate acts that support a substantive RICO claim.  In the brief in opposition to this motion, however, the plaintiffs identify four misrepresentations described in the FAC as their RICO predicates.  Three of the four alleged misrepresentations occurred in late 2012 and early 2013.  They are Sweeney's false statements that an individual had become an advisor to the Fund, that the Fund had other investors, and about the Fund's value.  The fourth alleged misrepresentation was in September 2017, when Valdez's lawyer failed to disclose that the Property had been sold.

9

The RICO claims accrued no later than August 2013, when the investments in 10E63 Inc. and ESO were sold for far less than their true value. By no later than 2014, the plaintiffs had discovered the fraud. Pioneer and the Investor were investigating the 2013 Investment Sales and came to understand that the defendants had mismanaged the Fund's investment in 10E63 Inc. and other assets. Indeed, on September 22, 2014, Pioneer filed a § 1782 action in this Court seeking discovery in anticipation of filing legal proceedings in the Cayman Islands.[1] In support of that petition, Pioneer submitted a proposed complaint for anticipated litigation against Crescent and Sweeney in the Cayman Islands for breach of fiduciary duty and dishonest assistance. That proposed complaint alleged that the 2013 Investment Sales were executed at less than the "true value" of the assets and that Sweeney knew that to be true. Accordingly, the four-year statute of limitations began to run no later than 2014. Because this action was filed in 2022, the RICO claims are untimely.

The plaintiffs argue that they did not know the extent of the alleged fraud or have inquiry notice until 2021 when, as a result of the second § 1782 action, they learned about

---

[1] This proceeding is captioned In the Matter of the Application of Vermeer Investments Limited and Pioneer GP Limited (as general partner of Pioneer Recovery Fund LP) for an Order Seeking Discovery Under 28 U.S.C. § 1782, 14 Misc. 317.

litigation relating to the 2016 sale of the Property in New York
State court.  This argument misunderstands the injury-discovery
rule governing the statute of limitations for RICO claims.
While the plaintiffs may have discovered additional facts in
2021 relating to the alleged fraud, they began their inquiry no
later than 2013, and in the exercise of reasonable diligence
would have discovered the fraud no later than 2014.  As of that
date, the statute of limitations on the RICO claims began to
run.

II.  Leave to Amend

     The plaintiffs request that, if the defendants' motion to
dismiss is granted, they be given leave to amend the FAC.  In
general, leave to amend should be "freely give[n] when justice
so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend may be
denied, however, "for good reason, including futility, bad
faith, undue delay, or undue prejudice to the opposing party."
Eastman Kodak Co. v. Henry Bath LLC, 936 F.3d 86, 98 (2d Cir.
2019) (citation omitted).  Additionally, a plaintiff "need not
be given leave to amend if it fails to specify . . . how
amendment would cure the pleading deficiencies in its
complaint."  TechnoMarine SA v. Giftports, Inc., 758 F.3d 493,
505 (2d Cir. 2014).

     The plaintiffs' request for leave to amend is denied.  The
plaintiffs have already amended their complaint in response to

Sweeney's prior motion to dismiss and were cautioned that it was unlikely that they would be given a further opportunity to amend.  The plaintiffs have not identified how further amendment would address the deficiencies in the FAC.  Moreover, the RICO claims are time-barred as a matter of law, and the plaintiffs have made no showing that any amendment could cure that defect.

III. Supplemental Jurisdiction

The plaintiffs' remaining claims are state law claims.  A district court may decline to exercise supplemental jurisdiction over a state law claim if "the claim raises a novel or complex issue of State law" and/or the district court "has dismissed all claims over which it has original jurisdiction."  8 U.S.C. § 1367(c)(1), (3).  Once a court has dismissed all federal claims, it must decide whether the traditional values of "economy, convenience, fairness, and comity" counsel against the exercise of supplemental jurisdiction.  Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 85 (2d Cir. 2018) (citation omitted).

> In weighing these factors, the district court is aided
> by the Supreme Court's additional guidance in
> Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343 (1988),
> that in the usual case in which all federal-law claims
> are eliminated before trial, the balance of factors
> will point toward declining to exercise jurisdiction
> over the remaining state-law claims.

Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006).  Likewise, it "is well settled that where . . . the federal claims are eliminated in the early stages of litigation,

courts should generally decline to exercise pendent jurisdiction over remaining state law claims." Whiteside v. Hover-Davis, Inc., 995 F.3d 315, 325 (2d Cir. 2021) (citation omitted).

There is no reason in this case to depart from the ordinary practice of dismissing the remaining state law claims. Each of the federal claims has been resolved. Judicial economy and comity weigh in favor of dismissal. The plaintiffs make no argument in support of supplemental jurisdiction. Accordingly, the Court will not exercise supplemental jurisdiction over the state law claims.

### Conclusion

The defendants' March 13, 2023 motion to dismiss is granted. The RICO claims are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over the state law claims, and they are dismissed without prejudice to refiling in state court and without prejudice to any state court addressing the requests that this action be dismissed for lack of personal jurisdiction over the defendants and under the doctrine of forum non conveniens. The Clerk of Court shall close the case.

Dated:    New York, New York
          July 6, 2023

_____
          DENISE COTE
   United States District Judge